Case number 22-16-56, Aaron Salter v. City of Detroit MI at all. Arguments not to exceed 15 minutes per side. Ms. Masseron, you may proceed for the appellant. Mary Masseron on behalf of the defendant appellant Donald Olson, I'd like to reserve four minutes for rebuttal. Officer Olson urges reversal here for multiple reasons, including the lack of jurisdiction under HEC and the protection of qualified immunity, which has a number of points under it. The HEC issue has been taken care of, hasn't it, by Cheney-Snell? I don't think so. It's not jurisdictional. You didn't raise it below. That's it, isn't it? No, because the decision specifically says we hold only that for a HEC claim there is no pendent jurisdiction. The facts of that decision, it was very lengthy, but in any case, the facts of that decision are that the defendant raised HEC and conceded, though, that he would not prevail if he accepted the plaintiff's facts as the plaintiff alleged them, and that's not applicable here because we have accepted the facts. But why can we review your HEC argument? Was it made below? My understanding was the HEC argument was never presented to the district court. No, but jurisdiction, if that's a jurisdiction... Cheney-Snell says it's not a jurisdiction argument, right? Cheney says we don't have pendent jurisdiction. I'm not sure Cheney... And there's very explicit language. I mean, it's a long opinion, but they very carefully... I know. I know, at the last minute. But they very carefully... But, I'm sorry, the HEC claim would have to be jurisdictional, otherwise it's waived, right? That's correct. That's correct. And I don't want to... We're here on our interlocutory jurisdiction. We're here in a qualified immunity appeal, which includes this HEC argument. I mean, the thing is, when we have interlocutory jurisdiction, we're very careful about our jurisdiction, of course, right? We get to review a qualified immunity issue quickly, or a denial of qualified immunity quickly, because then the officer has to go to trial. They're essentially lost of that privilege of the immunity. My understanding of Cheney-Schnell, as we said, not the same thing as the HEC claim. That can be raised later, and sometimes we exercise some pendent jurisdiction over other claims when they are kind of completely intertwined. And here, very squarely in Cheney-Schnell, we said not here. I don't read the decision that way, and I don't want to spend all my time on that if the court isn't convinced. But I read the decision as saying, is there a collateral stop, a collateral order here? And the collateral order doctrine, because of Johnson v. Jones, requires the plaintiff, or the defendant who's raising the issue, qualified immunity including HEC, to accept the plaintiff's facts. And here, the defendant in that case specifically said, if I accept their facts, I lose. That immediately took it out of the collateral order doctrine, because of Johnson v. Jones, and required the defendant to say, it's not really the qualified immunity, Johnson v. Jones, collateral order argument. You have pendent jurisdiction. And based on that, the court's holding is explicitly limited to saying, we only hold that we do not have pendent jurisdiction for a HEC claim. My claim is not raised as part of pendent jurisdiction. It's raised as a jurisdictional argument. And maybe I should move on. I don't, because I see my time is going. It's an important issue, a long case. I would urge the court to look again. I think it's more limited than the reading it appears, if you read it. So let me talk then about qualified immunity. First of all, there's a two-stage argument here. The first point is whether Brady, as an absolute obligation of disclosure on police, was clearly established in 2003. Opposing counsel says Muldoon. Can I ask you about the clearly established? It seems to me that you, in your motion for summary judgment, you said that it was clearly established. It says, since it is clearly established that people have the right only to be arrested, prosecuted when probable cause exists, not have expulsory impeachment evidence, withheld from them, and not for proper photo ID procedures to be used, it becomes the court's duty to determine whether, in light of totality of circumstances, blah, blah, blah. So you concede that the law is clearly established in your motion for summary judgment. And then the district court, in the opinion, says, oh, by the way, the defendant isn't contesting that the law is clearly established. So what are we doing here on clearly established? Why are you raising it now? It's invited error. I don't think it was invited error. I don't think it was invited error. It certainly was raised, and maybe not as artfully as it might have been, I understand. It's not artfully raised. It's literally conceded. It said, it is clearly established. Like, I'm looking for the argument in here, and I don't know what the district court is looking for. Clearly established that there needs to be probable cause. Nobody would dispute that. That doesn't get to the questions in this case. I mean, I guess I'm not understanding what the district court was supposed to do. So, you know, is there a constitutional violation? Is it clearly established? It's a two-part test. The party comes in and says, since it's clearly established, and if I'm the district judge, I look at that and say, oh, okay, so we're just talking about whether the Constitution was violated. Let me give you another argument backwards from that. The defendant filed a motion for reconsideration, making more apparent and overt the qualified immunity argument. It was rejected in an order not because, hey, you didn't raise it before, but because the judge said, everything here is exactly the same arguments. I'm paraphrasing. The same arguments you raised before. And I think if the court had questions about the clarity with which the argument was made in the initial pleadings, that goes a long way toward resolving them. Are we talking here about whether the constitutional right not to have exculpatory evidence withheld is clearly established? Is that what we're asking? Or are we asking, is it clearly established whose obligation it is to disclose this information? I think that's point one of the argument. And that's the point I tried to lay clearly as I could in the brief to this court. Muldowen was the first time the court explicitly said the Brady obligation applies to officers. And throughout the majority opinion, Muldowen. And what year? That was 2009, six years after the incident here. But when did they say in the 2009 case, they said it was clearly established in that case. And so when was the incident in that case when they were saying it was clearly established that police can't withhold exculpatory evidence? I would have to go back and look. I believe it's 1990. I believe it's 1990 or thereabouts. So we have precedent saying that as of 1990, it was clearly established that police can't withhold exculpatory evidence. When were the events in this case? I don't read Muldowen that way. And I think when you read Muldowen and you read the concurrence together, and you read them in light of the current U.S. Supreme Court's very clear instructions over and over again, I think heightening. Did we find qualified immunity in Muldowen then for the police officer? The court did. There's no question about it. But here's the problem with that, with accepting that here. First of all, the U.S. Supreme Court has said since that time, repeatedly, and I cited in my brief, over and over and over again, they've questioned whether even any circuit court could clearly establish the law without a decision from them. And then they've said, well, if there's a robust consensus of cases, maybe. That's a stronger standard. And it's gotten stronger with every passing decision. So I would argue if you take Muldowen in the light of that law, you would look and then look at that case with the multiple comments throughout both the majority's opinion and the concurrence from the concurrence, recognizing we've never said this so directly. We've talked about the obligation for the prosecutor. But this is different. There's all these qualifying statements about the law all the way through. And in fact, this court, albeit in unpublished opinions, in 2004 said that Brady unquestionably only applies to the prosecutor in the Lindsay v. Boggs decision. So if this court wasn't clear about whether it was clearly established, it seems to me under current Supreme Court precedent, it would not be correct to say that a lay police officer should have understood that. Page 382 of Muldowen. We write, any reasonable police officer would know that suppressing exculpatory evidence was a violation of the accused constitutional rights. Are you saying that the Supreme Court overturned that? I'm making a... No, there's two things I'm saying. And I think this is also clear in Muldowen. Muldowen speaks a lot about extending the obligation. And it's very clear Muldowen is doing that. It's relying on prior cases. Those prior cases arose in factual circumstances that were far more severe. If, for example, in one of the cases, an officer knows about exculpatory evidence and perjures himself, which is one of the cases cited in Muldowen, that would have been clearly established long ago. I don't think anybody would dispute that. The question is whether an officer has an obligation to pass on everything and that prosecutorial absolute duty, whether that applies to an officer. And before Muldowen, the law was exceedingly murky, including the law that's cited in that opinion. And it seems to me, looking at that in its totality, in light of the Supreme Court opinion, that Brady obligation... And we're not talking here about perjury or hiding or destroying evidence. You'll have your rebuttal time. Thank you. Okay. Rebuttal. Mark Ronzato on behalf of the plaintiff, FLE. To respond to your existential question, what are we doing here? We are listening to a more sophisticated lawyer on the defense side than the defendant had at the trial court. A more sophisticated lawyer who is, in fact, raising issues that weren't raised below and trying to resurrect things that they conceded in the lower court. That's what we're doing here. Let me start just briefly, not five minutes on the heck thing. Ms. Masseron is incorrect with respect to the Cheney-Snell case. The Cheney-Snell case addressed two different issues. One is whether the heck issue fell within the collateral order doctrine, and it said no. And the reason it said no is quite obvious, because it can be raised at the end of the case. It can be reviewed by this court at the end of the case. Therefore, it doesn't fit within the collateral order doctrine. Which means, of course, that Ms. Masseron can tell her counterparts at the lower level that they could, in fact, perhaps raise the heck doctrine if they'd like to. They'd be wrong in raising it. I've cited two unpublished cases from the United States Eastern District who got this precise issue correct. But the fact is, the second issue that the Cheney-Snell court addressed was, in fact, this pendent appellate jurisdiction, and it rejected that too. So the fact is, your first observation was, in fact, correct. Cheney-Snell deals with the heck issue. Moving on then, quickly, to the Brady issue. I haven't heard any suggestion that this was, in fact, a Brady violation. And as you noted in the district court's footnote five, they did, in fact, waive the question of whether it was well established at the time. They did. I don't see anything in your briefing on appeal, though, that kind of raises that. Or maybe I missed it. But it is possible to waive a waiver argument. Would you agree with that? I never thought of that. But the fact is... Let me ask you about clearly established, because I think there's some serious problems here on the clearly established. What case is close to this one in terms of the exculpatory evidence here? In other words, a second photograph or a photograph of the accused being exculpatory. What can we look to that would say that was clearly established? This is another problem with the defendant's position in the appeal. Because going back over the district court's decision, the district court's decision was not based solely on the photograph. The district court's decision said that that photograph had to be put into context with another piece of information that wasn't shared with the defense in this case. And that piece of information was that the day of the shooting, on the second visit that Officer Olson made to Mr. Luster, he showed him first the picture alone of my client. Then he moved to an array that included E, Mr. Collins. And what we have learned during this discovery process in this case is Mr. Luster told the officer that's one of the shooters. Collins is one of the shooters. Now this is a point that the defendant studiously avoids when talking about the Brady issue in this case. But it was a huge component of the district court's decision in this case. So we not only have a situation where there's a picture, a separate picture of Collins, E as he's called in this case, but we also have Mr. Luster explicitly telling Olson that in fact he was one of the shooters. Now put this case together. What happens when Olson goes to Luster's house for the second interview is Olson prompts him by first telling him, we got the guy with the long gun. We got the taller guy. Is this Rob, the 5'7", 150-pound guy? Showing him a picture of my client. Now it turns out everybody now knows it couldn't have been Rob. Mr. Salter could not have been the person that he identified as Rob precisely because Mr. Salter is about 6'4", 250 pounds. And even Officer Olson conceded that that was a mistake. But what later happens in the case is Mr. Luster testifies at both a preliminary exam and a trial. He can no longer say that this is Rob because everybody knows he's identified Rob as 5'7", and 150-170 pounds. He ends up testifying that's the guy that was the taller of the two. Now put it all together. What does this mean? It means that the guy that he identified, the person that he ended up identifying in the preliminary exam and the trial, as a shooter, the taller of the two, was in fact, as he testified, Mr. Salter. But he had told Olson in the second interview on the day of the shooting that was Eve. Now you can't get much more material than that in my estimation in terms of a Brady violation. I just want to ask you a clarification about the photo. And I know you're talking about it also in the context of the array when Mr. Luster identifies Eve. But what we have in the record here has this photo and then another piece of paper and notations. Was all of this excluded or just the photo? And what should we take from this other text here? Is this like more indication that somebody thought he was a suspect and so it should have certainly been turned over? Or did this come later? Is there anything in the record that tells me what this is? All I know is that it was a piece of evidence that was presented in the civil case. I don't know if that's the exact replica of what he was shown in the array. The array is, in fact... Right, the array is different. This is the kind of separate picture. I guess I was questioning whether this was kind of appended to the picture and also missing from what was turned over. I don't know the answer, I'm sorry. Isn't that the big picture that was turned over? Yes, that's correct. That's the picture the officer should have turned over, right? That's the picture that was in the officer's file that did not get turned over to the prosecutor.  Yes. And the officer should have said that. Well... The witness had identified somebody else as the shooter. Yes, that's the other part of the radio clip. And that was clearly established in 2001 or 2, whenever that was. Well, this is August of 2003, that's correct.  Yeah. So in terms of... I mean, is it just Brady? Like, what level of abstraction are we looking at here? Well, this is a situation where the ultimate testimony that leads to my client's guilty verdict is brought by a person who previously identified that shooter as E. And that's a piece of information, when you put this case together and construe it in the light most favorable to my client, which of course you have to do at a qualified immunity stage, it's unquestionably material. Didn't he pick him out as E from the array? I'm sorry? Didn't he pick him out from the array as E? Yes, that's correct, he did. So... And that's when he told... Does that make the big picture exculpatory or just potentially useful? Well, he picks him out as one of the shooters. He picks E out as one of the shooters. That's something that he conveys to Olson that Olson does not put into his file. And there's no... I don't think there's any way you could mix up E with Rob. Well, I'm not talking about mixing them up, I'm just trying to figure out what is it exactly that he failed to disclose or he hid from the prosecutor or... I mean, Lester picked him out as one of the shooters from the array, and he said so. Yes. So the big picture is why is that actually exculpatory as opposed to just something that could have been useful to reinforce the idea that he'd already picked the guy out from the array? Yes, he picked the guy out from the array, but that's not something that gets to the... that doesn't get into the officer's notes, and it doesn't get to the defense. Is it that the picture, the big picture, which is of E as well, the same guy who was picked out and then there was Ray, is that this kind of together shows that there was another suspect and another suspect who indeed was identified by the witness, by Mr. Lester, and that kind of... Maybe you have enough of a claim, I don't know, but you have part of your claim is that the information about identification of a different person should be turned over, but then also the fact that we have a big picture of the same guy who was in the array kind of even elevates that point. Am I understanding your argument? That's part of the argument because one of the pieces of information that was provided obviously in this civil case was the affidavit of the lawyer who represented Mr. Salter in the trial court, and part of his affidavit explains that if he had a separate picture of one person, not just the array, but a separate picture, that that would have led him to pursue this further as somebody who was responsible, that there was another suspect. So the picture itself is important to the defense, the fact that it's an isolated picture of one person. Had he gotten that, and his name is Lyle Harris, he submitted an affidavit in this case, and one of the things that he did in fact talk about is precisely that, that he would have done something more had he had an isolated picture, not just the array. The final issue in the case is in fact the suggestive array. The fact is that I think this court's decision in the Gregory case disposes of this issue as well. Gregory makes it, it seems to me, quite clear that this one-on-one decision on the part of the one-on-one, whether it's the actual show-up, I guess they call it, that was involved in the Gregory case, or a single picture. Do you agree that the suggestive ID claim is really, it seems like this is a prophylactic rule that really gets at whether you get a fair trial or not. Do you agree with that? Yes. This is a fair trial, right, ultimately. Yes, it's a due process issue. So why is it that it's even a claim that there was a suggestive ID that happened without talking about the fair trial aspect of it? In other words, we know that the Supreme Court just said last year that you don't have a 1983 claim for Miranda claims, right? Because Miranda's just a prophylactic rule, it's a means to an end, right? Why is this not the same thing? This is just, we're trying to get at a fair trial here. The suggestive IDs, the injury is when it's admitted at trial. It's not really, doesn't really have anything to do with what goes on before that. But if you're suggesting that there has to be a causal relationship between the unfair trial, I would accept what you have to say, but I don't, if you establish, if putting this case together, I'm sorry. I guess I didn't see anything in the district court opinion that talked about that aspect of it. Did you see anything in the defendant's motion for summary judgment that talked about that? I did see this one raised briefly, I think. So yeah, actually I did. So what I'm saying is this one might be problematic. Would you agree if I say there was possibly the fair trial aspect was raised and the district court never really talked about it? I don't, it would seem to me that in light of the facts of this case and the way things turned in this case based on an identification that was unnecessarily suggestive, that you could, that the plaintiff will be able in this particular case to establish a pretty good, clear, causal connection between what Officer Olson did in planting this in Mr. Luster's mind and the ultimate wrong here, which was the conviction. I think this is a case that could in fact clearly establish that connection. But if, okay, maybe, but we're here on a summary judgment motion and the question is whether that showing is made now, right? I mean, the district court didn't really link the suggestive ID to the fair trial and I'm just wondering whether that has to be done as a matter of disposing of this motion. Well, then my guess would be that you'd have to say we need further facts findings. But the fact is, I mean, I don't recall seeing this, and I'm sorry, in the defendant's many reasons for granting summary judgment. But if there was some gap in this decision that hasn't been addressed, then you can send that issue back down. But maybe I just misinterpreted what it is that you're arguing with regard to that single photo identification. I'm sorry, I don't hear very well either, so let me try harder. I thought you were saying that it was a clearly established constitutional right not to have a single photo, not in an array, but a single photo presented. That's correct. How is it clearly established that at that early stage of the proceedings when sort of what, as I understand the facts here, sort of what happened was Luster said, well, he knew Rob, and so the cop said, is this Rob? But nobody was in custody, nobody had been arrested, how is it clearly established that at that point, those proceedings, that that is a clearly established violation of the Constitution? Clearly established, and again, I would rely on the Gregory case for this, what was clearly established is you don't do this unnecessary demonstration of one picture. As you know, it was a clear violation of Detroit City Department rules. The clearly established constitutional right depends on the subjective determination of whether it was necessary? Well, that's part of the equation, certainly. Under Stovall, it has to be unnecessarily suggestive, and that is, in fact, the requirement, it seems to me, under Stovall, which is a 1967 case, in terms of prohibiting unnecessarily suggestive photographs. Identification, excuse me. Is your argument about the suggestive identification based on the singularity of presenting the one photograph of Mr. Salter, or is it conjoined with the statement that we've already picked this guy up who had the long gun and whatever, that it was like a priming the pump situation? Yes, they go together, okay? And if you go back and read the Gregory case, the Gregory case talks about when police come and they say, we've got a suspect, okay? This is exactly what Olson did here. Olson said, we got the guy with the long gun, okay? Is this Rob? That's the way this went down. So it's not only the single photograph, it's the statements he made preliminarily to showing this. And that's, of course, when Mr. Luster did, in fact, agree that it was Rob erroneously. I've overstated my welcome. Thank you. Thank you, counsel. Roberto. A couple of points. First, with respect to the photo mug shot, I believe, but I can't find it in the record right now, that there was a statement by one of the prosecutors or someone that the notes were added later because the original, this is like a copy of the original mug shot, which was lost. So I don't think that, I think it's notes added later that wasn't part of the original police file. That's my understanding. With respect to the question of Luster, my recollection of the record in this court's law is that, as your question went to, the officer said, do you know this guy? Oh, yeah, I know him. Is this him? Yes, it is. And that's an entirely different situation, as the case is cited in my brief, I think, to an instance where the person is not known before the incident at stake. I think it's important and very enlightening to think about what Salter already knew as well, and I would refer the court to record number 2714 and 2715. 2714 is Salter's death. 2715 is the letters that he sent to the criminal trial judge after the trial in which he explained that he is his cousin. He'd been riding around with, Rob is his cousin. He'd been riding around with Rob. Rob was selling drugs. He's a guy they knew. He's a competing drug drive guy. He shot his cousin. He knew all of this before the shooting that occurred here. So when you're asking about whether Luster's statement told his criminal defense lawyer anything, he hadn't told his lawyer, and he didn't know. The answer is, from his own words, no. He knew all of this at the time of his trial. His defense lawyer inexplicably didn't put on any of this evidence, and it's not clear to me why not or what happened. It's also the case that in terms of the show-up, we've argued not only that it was confirmatory and cited cases in support of that, which makes a difference, but Salter's lawyer then used the show-up at trial. The photo, right? Yeah, the photo. How is it confirmatory if Mr. Salter's photo is not in it, which is what Mr. Olson testified to? How does it confirm that identification? No, no, I'm sorry. Let me clarify. Thank you. So the argument about the unduly suggestive photo is not based on the array. It's based on the single mugshot that was shown in the first visit. And what the theory is, is you shouldn't have shown that single mugshot. You should have shown an array. And the answer is because Salter or Luster knew this person beforehand, it changes the analysis. If John is in a crime and they're asking him about Sally, his cousin, and he knows his cousin, and they say, oh, is this Sally? And he says, yes. That's not unduly suggestive because it's confirming an identification he knew all indisputably out of his larger life. It's not an eyewitness identification of a stranger in a moment where that concern really comes into play. And that's the difference, and I think that's what the cases say, and that's why it would not have been apparent to Olson that that was a violation or that that was a violation of constitutional rights when that occurred. In addition, we argued about collateral estoppel, and I would urge the court to look at the watermark senior living retirement communities where the court made clear that in interpreting Michigan law about collateral estoppel, the mere fact that a judgment has been vacated doesn't mean that all collateral estoppel effect of a judgment has been vacated. And the court differentiated between a judgment vacated by settlement, which is more what we have here, and a judgment that's been vacated by a judicial hearing on the facts. I see that I'm over, and I know the court has listened and is focused on this case. I don't want to belabor things that are in the briefs, but I do want to answer any questions. I don't have any. No, I'm good. Okay, thank you, Counselor. Thank you both for your arguments. The case will be submitted.